768

**FEDERAL TRADE COMMISSION v.
MAISEL TRADING POST, Inc.**

No. 976.

Circuit Court of Appeals, Tenth Circuit.

July 21, 1936.

Eugene W. Burr, of Washington, D. C., William T. Kelley, Chief Counsel, and Martin A. Morrison, Asst. Chief Counsel, both of Washington, D. C., Harry W. Blair, Asst. Atty. Gen., Charles E. Collett, Atty., of Washington, D. C., and Wm. C. Lewis, U. S. Atty., of Oklahoma City, Okl., for petitioner.

John F. Simms and Donald M. Bushnell, both of Albuquerque, N. M., for respondent.

Before LEWIS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge.

This proceeding was originally instituted to enforce an order of the Federal Trade Commission, with a finding that the respondent while engaged in interstate commerce misled the public in connection with the sale of Indian jewelry. The controversy revolved around the use of the terms "Indian" and "Indian-made." Upon the original hearing the court confirmed the order of the Commission with modifications, which detailed specifically the permissive use of the terms. (C.C.A.) 77 F. (2d) 246. Subsequently the petitioner applied for a rehearing upon the ground that the modified order was. too complex to be followed without great difficulty, and that the order covered processes which were not involved in the controversy, in which contention the respondent seemed to concur. Thereupon, this court modified the substantive features of the orders so as to read as follows (79 F.(2d) 127): "It is now ordered that respondent, its agents, representatives, and employees, shall cease and desist from designating, describing, or offering any of its silver jewelry products for sale in interstate commerce as 'Indian' or 'Indian-made' jewelry, where in substantial part machinery (other than hand tools, or nonmechanical equipment, or buffing wheels for polishing) shall be substituted for hand hammering, shaping, or ornamenting the same, unless the label, stamp, catalogue, or advertising shall clearly, expressly, and legibly state the method of such manufacture in immediate context with the descriptive terms."

The modified order seemed to generally meet the approval of both parties, but the petitioner and amici curiæ now by motion complain of the interpretation of such order on the part of the respondent, in that its advertising and literature is not sufficiently explicit to advise the public of its operations in the manufacture of jewelry as Indian made. As no appeal was taken from the last modified order, it has become final. The motion of the petitioner and the answer of the respondent thereto contain copious examples of the respondent's advertisement in connection with its attempt to comply with the order and these are generally in accord, so that the dispute narrows down to a proposition of determining whether or not this advertising is in substantial compliance with the order.

The gravamen of the charge of the petitioner may be exemplified by the samples exhibited. A small pamphlet described in detail the manner in which the jewelry offered for sale by the respondent is fashioned, in which it is stated that the manufacture of the jewelry from silver dollars has been dispensed with and ordinary coin

silver reduced to 900 fine is prepared for the handwork of shaping, decorating, and finishing by being rolled by an Indian to reduce it to a sheet of the desired thickness, the Indian then by using a press cuts out the blank silver in the general shape of the article to be made, in which condition it reaches the work bench where the Indian smith hand hammers, files, shapes, decorates, and polishes it by hand as the finished product. Other statements further explain in detail the method of manufacture of certain types of jewelry, expressly setting forth certain articles in which parts are purchased and not made by the Indians in connection with the manufacturing process. No particular complaint is made of this feature of the advertising, nor can there justly be, because it evidences the good faith of respondent in meticulous form. The suggestion of the petitioner in this respect is, however, that these pamphlets are not attached to the specific articles of jewelry exhibited for sale, and the real purpose and intent must be gathered from the specimens attached to the individual articles. In this respect all these specimens carry substantially the same purport, except as they may be applied to different articles manufactured in a different way. One example will suffice: "Guaranteed Indian-Made from 900 Fine sheet and wire, Coin Silver and Turquoise; press cut and domed blanks; filed, decorated, shaped and finished entirely by hand."

The exact point contended for by the petitioner is, that the term "press cut and domed blanks" does not suggest to the purchasing public the use of machinery. With this contention we cannot agree. The theory of the petitioner's whole case is, that with those of the public interested in the purchase of Indian-made jewelry, the fashioning in the first instance of the silver is a process of hand hammering, and therefore the public is entitled to know when this hand hammering is dispensed with and the use of machinery substituted therefor. This theory was approved and confirmed by this court. But the petitioner now says that the public interested in the purchase of Indian jewelry will not be advised that the term press cut necessarily involves the use of a pressing machine. We cannot believe that those so discerning in the art of Indian jewelry making would be so ignorant in their understanding of ordinary English language. Furthermore, it will be noted that the ingredients and the process-

es of manufacture of the articles are distinctly separated by semicolons, and each phrase thereby expresses a separate and distinct element. As for example, the use of a press is distinctly cut off from what is indicated as being done in the manufacture by hand, and therefore it clearly appears that the press is substituted for hand hammering. There ought to be no confusion in the minds of the public in such a description of the method of manufacture. We see no merit in the petitioner's motion. It will therefore be overruled and denied, with costs assessed against the petitioner.